[No. 21247.    Department One.    June 25, 1928.]

LAKE SHORE SAW MILL & LUMBER COMPANY, *Appellant,*
v. HOQUIAM LUMBER & SHINGLE COMPANY,
*Respondent.*[1]

[1] SALES (11)—OFFER TO BUY AND ACCEPTANCE—WITHDRAWAL. Where an order for lumber was made contingent on acceptance of a sample car, which was unsatisfactory to the purchaser except on conditions unsatisfactory to the seller, no contract was consummated for the balance of the order.

Appeal from a judgment of the superior court for Grays Harbor county, Campbell, J., entered July 22, 1927, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*F. L. Morgan,* for appellant.

*John C. Hogan,* for respondent.

MITCHELL, J.—This action was brought by the Lake Shore Saw Mill & Lumber Company of Cleveland, Ohio, against the Hoquiam Lumber & Shingle Company to recover damages for the breach of an alleged contract for the sale of white pine lumber owned by the defendant and situated at its sawmill at Hoquiam, Washington. Upon the trial to the court without a jury the defendant prevailed. The plaintiff has appealed.

[1] The facts, as shown by the testimony, are substantially as follows: Respondent's mill cuts mostly

¹Reported in 268 Pac. 597.

fir and spruce. Occasionally, from time to time, small quantities of a kind of white pine rather rare on this coast are sawed at the mill. The mill had accumulated about 500,000 feet of white pine which had been cut and piled, partly in sheds and partly in the yards at its mill. None of it was kiln-dried. Appellant by its agent E. L. French, a lumber dealer of Portland, Oregon, undertook the purchase of the white pine, for which respondent asked thirty dollars per thousand at its mill. After examining the lumber, the agent procured from the appellant its signed order, in the nature of an offer to the respondent, which upon being addressed to respondent is as follows:

"Quantity: Approximately 500,000 feet. Description: White Pine. The above not to be Western Pine nor California White Pine but pure White Pine as per sample. 75% of this to be 2″ which will average about 2⅛ in thickness, balance 1″ thick. To be the full product of the log No. 3 Common and Better. Lengths 10 to 16 feet or if some 18s and 20s no objection. Weight: Guaranteed Standard Pine Association weight. Only one sample car to be shipped at this time. If sample car is satisfactory the balance to be divided in monthly shipments of 1/3 each. Terms: 2% 10 days from arrival and unloading of car or 60 days from date of invoice. Price: $30.00 per M f. o. b. cars.
        "THE LAKE SHORE SAW MILL & LUMBER Co.
                        "C. A. Krauss,
                                "Purchasing Agent."

The agent, French, took the instrument to the respondent. A discussion ensued between him and respondent's manager-superintendent over the probable weight of the lumber, the respondent not being advised of the weight of such lumber, and at the same time not willing to pay overweight and thus reduce the net price of thirty dollars per thousand to it at Hoquiam. The agent expressed, or ventured, the opinion that there would be no overweight. There-

upon, as the testimony clearly shows, respondent agreed that the written order or offer should be left with it, or placed in its files, without acceptance and that the "one sample car" should be made up and shipped as a trial to ascertain if it would be satisfactory to both parties. The instrument was left with the respondent. The sample car was made up and shipped. The evidence abundantly shows that it was fairly made up by lumber taken about equally from the sheds and yards, the same lumber and at the same places the appellant's agent had noticed in his personal inspection of it. Upon arrival of the car in Cleveland, the appellant advised the respondent by wire and letter, "Lumber satisfactory this car wet you may ship but ship dry stock," and in a few days billed the respondent for $170.31, excess freight due to overweight, leaving the respondent only about $23 instead of $30 per thousand for the lumber.

Thus both parties, and especially the respondent, were dissatisfied with the trial car. The respondent notified the appellant that dry lumber could not be furnished without kiln-drying it, which would make an additional cost of five dollars per thousand. This the appellant refused to pay and insisted upon the terms of the original offer. The respondent's refusal to comply resulted in this suit.

We have not set out, or referred in detail to, other communications between the parties, but upon an examination of them we find that they in no way detract from the history of the case as we have stated it.

Other than the sample or trial car of lumber, we agree with the trial court that "no contract was ever consummated or entered into by the parties."

Affirmed.

FULLERTON, C. J., PARKER, TOLMAN, and ASKREN, JJ., concur.